# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA,   )
  )
  )
v.   )      Case No. CR408-146
  )
TIMOTHY FRAZIER,   )
  )
  Defendant.   )

## REPORT AND RECOMMENDATION

Defendant Timothy Frazier has moved to suppress evidence seized after his vehicle was subjected to a traffic stop by two Savannah police officers, who observed him make a right turn and then change lanes without giving a signal. Accepting the officers' account of what happened, Frazier asserts that the stop of his vehicle was based upon a misinterpretation of the Georgia traffic code, which (he contends) simply does not require the use of a turn signal under the circumstances described by the officers. Because "a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop," <u>United States v. Chanthasouxat</u>, 342 F.3d 1271, 1279 (11th Cir. 2003), defendant contends that

suppression of all evidence seized from his vehicle is warranted, for that evidence was the product of the unlawful stop. He further contends that even if the traffic stop was lawful, the officers were not authorized to conduct a warrantless search of his vehicle.

After considering the testimony of the witnesses and the parties' post-hearing briefs, the Court is satisfied that the officers had probable cause to believe that Frazier had violated the state traffic code and therefore were entitled to stop his vehicle. The subsequent search of the vehicle, after a drug dog alerted to the presence of drugs, was permissible under the Fourth Amendment.

## FACTS[1]

At approximately 11:30 p.m. on August 14, 2007, Savannah Police Officers Minton and Niven were on routine patrol in their police cruiser traveling east on Liberty Street when they encountered an older model Oldsmobile proceeding in the same direction immediately in front of them. When they closed to about

---

[1] Only two witnesses testified at the suppression hearing: Officer Brent Minton and Cpl. Amanda McGruder of the Savannah-Chatham Metropolitan Police Department. The facts testified to by these witnesses are not disputed.

a car length behind the Oldsmobile, the driver of that vehicle shifted into a turn lane and made a right turn onto Price Street without using a turn signal. Following close behind the Oldsmobile as it proceeded south on Price, the officers then observed the vehicle maneuver from the right lane to the left lane of the one-way street without signaling a lane change. Believing that the driver of the Oldsmobile was in violation of Georgia law for turning and changing lanes without using proper signals, the officers activated their emergency lights with the intent of stopping the vehicle.

The driver (and sole occupant) of the Oldsmobile did not immediately pull over but proceeded on for several blocks before stopping his vehicle. Prior to exiting his patrol car, Officer Minton noticed that the driver of the Oldsmobile was moving around inside his vehicle and saw him lean over into the passenger area several times. Officer Minton approached the passenger door of the Oldsmobile, explained the reason for the stop, and asked the driver for his license and proof of insurance. The driver, who was soon determined to be defendant Frazier, began fumbling through his wallet and thumbing through some paperwork that was lying in the

passenger seat in an apparent attempt to locate his license. This behavior continued for some two to two and one-half minutes before the officer asked Frazier if he really had a license. Frazier responded "yeah, sure" and continued foraging around the vehicle, placing his hands further within and next to the passenger seat and reaching toward his pockets. Concerned for his safety, Officer Minton asked if there were any firearms or drugs in the car that he needed to be aware of. Defendant stated "no" as he continued to rummage around inside the vehicle. Minton asked Frazier for consent to search the vehicle but received no response to his request. The officer then directed Frazier to stop reaching around the cabin of his vehicle, but Frazier ignored the instruction and continued to do so. At this point, the officers removed Frazier from his vehicle and began to place handcuffs on him. As they did so, Frazier tried to reach into his pocket with his right hand, which prompted Officer Minton to restrain Frazier's arm until cuffs were applied. Frazier then stated that his driver's license was in his pocket, and Officer Minton reached into defendant's right rear pocket and removed the license. The officers then placed Frazier in

their patrol car. At this point, only some 10 minutes had elapsed since the traffic stop began.

Cpl. Amanda McGruder, who was also patrolling the area, heard about the stop over the police radio and drove to the scene to act as backup. Riding with her was "Officer Binky," a Belgian Malinois trained to detect the odor of illegal drugs. After securing the approval of Officer Niven, Cpl. McGruder led her dog around the exterior of the Oldmobile. The dog alerted on the vehicle, signaling that he had detected the odor of drugs near the rear passenger door area. Upon entering the car, the dog alerted on the console and the driver's side area. The officers then searched the vehicle, locating the firearm, drugs, and other evidence which form the basis of the instant prosecution.

## ANALYSIS

Frazier contends that the stop and the search of his vehicle were unconstitutional. (Docs. 17 & 26.) Specifically, he contends that the stop was based upon the officers' mistaken understanding

of Georgia law regarding the use of turn signals and that the subsequent search was made without a warrant or consent. (Id.)

A traffic stop, which qualifies as a seizure under the Fourth Amendment, is constitutional if it is based upon probable cause or reasonable suspicion to believe that a traffic violation has occurred. Chanthasouxat, 342 F.3d at 1275 (quoting United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)); United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999); see United States v. Arivizu, 534 U.S. 266, 273 (2002) (noting that the Fourth Amendment's protections against unreasonable searches and seizures extend to the investigatory stop of a vehicle). That is, "a police officer may stop a vehicle when there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quotations and citation omitted). "[T]he standard for determining whether probable cause exists 'is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent

person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" United States v. Hamilton, No. 08-10792, 2008 WL 4795648, at *3 (11th Cir. Nov. 5, 2008) (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (quotations and citation omitted)).

It is undisputed that Mr. Frazier did not use a turn signal when he shifted into the right turn lane on Liberty Street, when he turned onto Price Street, or when he changed lanes on Price. Having witnessed these turns and lane changes, Officers Nevin and Minton initiated the stop pursuant to O.C.G.A. § 40-6-123, which states that:

> [n]o person shall . . . turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section. . . . A signal of intention to turn right or left or change lanes *when required* shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

O.C.G.A. § 40-6-123 (a)-(b) (emphasis added).  Frazier, relying upon Bowers v. Georgia, 473 S.E.2d 201 (Ga. Ct. App. 1996) ("physical

precedent only"),[2] contends that the turn and lane changes did not require the use of a turn signal because they were made with "reasonable safety." Id. at 203 (reasoning that "no turn signal is required as long as [the turn] can be made with 'reasonable safety'"); Clark v. Georgia, 432 S.E.2d 220, 221 (Ga. Ct. App. 1993) (physical precedent) (same); see Hudson v. Hall, 231 F.3d 1289, 1296 n.6 (11th Cir. 2000) (recognizing that under the Georgia traffic code, turn signals must be given only when required by reasonable safety). Frazier's reliance on Bowers is misplaced, however.

The Bowers court concluded that a highway lane change was reasonably safe without a signal when there was no other traffic within 100 yards of the vehicle. 473 S.E.2d at 202-03; Clark, 432 S.E.2d at 221 (no signal required when motorist turned onto I-75

---

[2] Bowers was decided by a three-judge panel, but two of the judges simply concurred in the judgment. 473 S.E.2d at 204. (Beasley, J., and Birdsong, J., concurring in an opinion authored by Blackburn, J.). Under the Georgia appellate rules, only "a judgment in which all three judges fully concur is a binding precedent; . . . an opinion is *physical precedent only* . . . [where] there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said." Ga. App. Ct. R. 33(a) (emphasis added). Johnson v. State, 546 S.E.2d 922, 923 (Ga. Ct. App. 2001) (noting that the Bowers decision was "physical precedent only"). Bowers, therefore, is not controlling precedent, and as will be seen, the rationale of that decision has been curtailed by subsequent opinions issued by the Georgia Court of Appeals.

exit ramp and no other vehicles were in the area, as officer was 300 feet behind).  Similarly, in <u>Georgia v. Jones</u>, 448 S.E.2d 496 (Ga. Ct. App. 1994), the Georgia Court of Appeals found no violation of the statute when a defendant made a U-turn without using his signals where there were no other vehicles in the vicinity other than a police patrol car parked on the side of the road.  <u>Id.</u> at 497-98. Here, however, Officer Minton testified that he was directly behind, and very near, the Oldsmobile when Frazier veered into the turn lane on Liberty Street, made his turn onto Price, and then changed lanes without giving any signal.   Where there is other traffic (including a police cruiser) in the vicinity of a motorist, the Georgia Court of Appeals has uniformly held that O.C.G.A. § 40-6-123 requires the use of a turn signal.  <u>Woodward v. Georgia</u>, 537 S.E.2d 791, 792 (Ga. Ct. App. 2000) ("Here . . . it is undisputed that the officers' car was immediately behind [defendant's] vehicle [when it turned into a driveway without signaling]. . . .  In accordance with O.C.G.A. § 40-6-123, [defendant] was required to use his signal to alert the officers behind him of his intention to turn right.");  <u>Georgia v. Reddy</u>, 511 S.E.2d 530, 532 (Ga. Ct. App. 1999) ("the

other vehicle, i.e., the police car, was only five to seven feet to the rear, well within the ambit of the Act's 'zone of reasonable safety,' when such signals are required"); <u>Trippe v. Georgia</u>, 464 S.E.2d 655, 656 (Ga. Ct. App. 1995) (finding probable cause to stop under statute when police officer was directly behind defendant at a red traffic light and defendant turned without signaling);[3] <u>see</u> <u>United States v. Vereen</u>, 2006 WL 1344644, at *2 (S.D. Ga. 2006) (noting that driver required to use signal given traffic and "proximity of the trooper's patrol vehicle at the time of the lane change"). The Georgia Court of Appeals has gone so far as to find probable cause for a stop when a defendant was about to pull onto a deserted

---

[3] Minton testified that Frazier's actions did not place anyone in fear of harm, which Frazier contends demonstrates that the lane changes and turn were made with reasonable safety. (Doc. 17. at 5.) Under Georgia law, however, a motorist must signal a turn even when there is no specific danger to any other motorist, so long as another motorist is nearby at the time of a turn or lane change. <u>Reddy</u>, 511 S.E.2d at 106-08 (motorist stopped at three-way stop, with officer stopped directly behind, was required to signal right turn even though no specific showing that any other motorist was nearby or that anyone was endangered by the failure to give a signal); <u>Trippe</u>, 464 S.E.2d at 656 (motorist stopped at traffic light required to signal turn even though only nearby vehicle was officer who had stopped directly behind motorist at same traffic light); <u>see</u> <u>McBride</u>, 539 S.E.2d at 202 (signal required where officer was 25 yards from motorist at the time he turned right into roadway). Clearly, while <u>Bowers</u> suggests that turn signals are not required as long as a turn or lane change can be made with "reasonable safety," the Georgia courts routinely hold that turn signals must be given when another motorist is nearby, even when no specific safety issues are presented. In essence, the Georgia courts have adopted a proximity rule that presumes a safety risk exists whenever another motorist is in the vicinity of the turning vehicle.

roadway but a nearby police officer was also readying to enter the same roadway from another location.   McBride v. Georgia, 539 S.E.2d 201, 202 (Ga. Ct. App. 2000) (police cruiser and defendant were within a close proximity to each other such that reasonable safety required signal, even though there was technically no oncoming traffic or traffic approaching from the rear).[4]  Based upon this authority, Officers Nevin and Minton had probable cause to believe that a violation of O.C.G.A. § 40-6-123 was occurring, so the initial traffic stop was reasonable under the Fourth Amendment. Chanthasouxat, 342 F.3d at 1275.

Frazier notes that Officer Minton testified at the hearing that he believed that a signal must be used during any turn.  (Doc. 26 at 3.)  The Court acknowledges that Minton's belief is mistaken, for the Georgia cases have construed the "when required" language of O.C.G.A. § 40-6-123 as indicating that the legislature did not intend to mandate the use of a turn signal in every instance that a

---

[4] In addition, the Georgia Court of Appeals has indicated that repeated turns or lane changes without a signal may be taken into account in determining whether to make a stop.  Johnson v. Georgia, 546 S.E.2d 922, (Ga. Ct. App. 2001) (holding that officer had probable cause to stop under O.C.G.A. § 40-6-123 when he observed defendant change lanes three or four times without signaling and there were three or four cars on the roadway).

motorist makes a turn or changes lanes. <u>Trippe</u>, 464 S.E.2d at 656. But the officer's misstatement of Georgia law (which contemplates that turn signals are not required "when no other vehicles are in the area," <u>id.</u>,) is of no significance here, for it is undisputed that at the time Frazier made his turn onto Price Street and then changed lanes Officer Minton's patrol car was trailing immediately behind the Oldsmobile, within a car length or so of Frazier's vehicle. Under these circumstances the Georgia cases are all in agreement that a turn signal is required. Thus, even though Officer Minton appears to believe that a turn signal must be given no matter how far the driver is from other vehicles on the roadway (a view the Georgia courts have rejected), that misunderstanding of the law played no role in the traffic stop of Frazier's vehicle, which was well within the "zone of reasonable safety" which the Georgia courts have recognized as requiring the use of turn signals. <u>Reddy</u>, 511 S.E.2d at 532.

In addition to his probable cause argument, Frazier contends that he did not consent to the search of his vehicle. (Doc. 26 at 7). No consent was required to justify Officer Binky's free air sniff, as

a dog sniff during a traffic stop "does not qualify as a search for Fourth Amendment purposes." <u>United States v. Holloman</u>, 113 F.3d 192, 194 (11th Cir. 1997). Furthermore, "probable cause arises when a drug-trained canine alerts to drugs." <u>United States v. Banks</u>, 3 F.3d 399, 402 (11th Cir. 1993). Consequently, after the drug dog alerted, the officers had probable cause to search the vehicle for narcotics pursuant to the automobile exception to the Fourth Amendment's warrant requirement. <u>United States v. Steed</u>, ___ F.3d ___, 2008 WL 4831413, at *12 (11th Cir. Nov. 10, 2008).[5]

For all of the reasons explained above, Frazier's motion to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  26th   day of November, 2008.

/s/ **G.R. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

---

[5] Cpl. McGruder arrived at the scene and performed the search within minutes of the stop of Frazier's vehicle, while the officers were awaiting a dispatch check of his driver's license. Thus, no delay issue is presented on these facts.